Merrimack County Probate Court
No. 86-006

*In re* DANA CHAMPAGNE

December 8, 1986

*Stephen E. Merrill*, attorney general (*Stephen J. Judge* and *David S. Peck*, assistant attorneys, on the brief, and *Mr. Peck* orally), for the State.

*Leahy & Vanacore*, of Concord (*John G. Vanacore* on the brief and orally), for the petitionee.

JOHNSON, J. The petitionee challenges his placement at the secure psychiatric unit (SPU), formerly the forensic unit, which is on the grounds of the State prison and is administered by the department of corrections. The petitionee killed his parents in October of 1983. Shortly thereafter, he was ordered confined at the forensic unit of the New Hampshire Hospital (NHH) to await trial. He was subsequently found to be incompetent to stand trial on criminal charges. *State v. Champagne*, 127 N.H. 266, 497 A.2d 1242 (1985). A description of the defendant's bizarre delusions is set forth in that decision and need not be repeated here.

In order to retain its authority to continue the petitionee's detention, NHH petitioned the Merrimack County Probate Court (*Cushing*, J.) for Champagne's involuntary commitment pursuant to RSA chapter 135-B. A hearing was held on December 5, 1985, before the probate court, which found that the petitionee should be committed for in-patient treatment and further transferred him to the SPU for a period not to exceed two years, pursuant to RSA 622:45.

The petitionee appeals his involuntary commitment to the SPU on the following grounds: (1) that the probate court used an incorrect legal standard in confining the petitionee to the SPU; (2) that there was insufficient evidence to support a finding by the probate court that the petitionee presented a danger to himself or others; and (3) that the petitionee's due process and equal protection rights were violated. We find no error and affirm.

We begin our analysis with a discussion of the standard which the court must apply to determine whether an individual is to be confined to the SPU. The parties do not dispute, for the purposes of this case, that the standard for involuntary commitment is proof beyond a reasonable doubt that an individual creates "a potentially serious likelihood of danger to himself or to others." RSA 135-B:26 (repealed by Laws 1986, 212:4, V, effective Jan. 1987); *see Proctor v. Butler*,

117 N.H. 927, 935, 380 A.2d 673, 677–78 (1977). *But see* N.H. CONST. pt. I, art. 15 (amended Nov. 6, 1984).

■ Once that standard for involuntary commitment has been satisfied, an individual may be involuntarily admitted for in-patient treatment within the State mental health services system. The State may then seek a transfer of the patient to the SPU, which is under the control of the department of corrections. RSA 622:45. The issue before us is what standard must be met in order to effect a transfer to the SPU pursuant to RSA 622:45. Today we hold that the probate court need determine only by a preponderance of the evidence, and not beyond a reasonable doubt, that the individual would be a danger to himself or others "if admitted or retained in a receiving facility in the State mental health services system." *Id.*

■■ The next issue is whether or not, according to the applicable standard we have enunciated, the evidence in this case was sufficient to support the probate court's finding that the petitionee should be housed at the SPU rather than at the Brown Building or a less secure unit at NHH. In order to find that an individual is potentially dangerous, it is not necessary to find that he or she has committed specific acts *in addition* to the crime of which he or she has been charged. The evidence necessary to order a transfer to the SPU may be "evidence of the acts that gave rise to the [original] criminal charges . . . [and] may be based on a pattern of prior action and testimony relating to the question whether or not any cure for defendant's condition has been effected." *State v. Hudson*, 119 N.H. 963, 967, 409 A.2d 1349, 1351–52 (1979).

■ The State and the defendant stipulated to evidence of the crime for which the petitionee was arrested, and the State presented evidence of incidents which occurred during the time in which the petitionee was waiting to be declared competent to stand trial. Evidence was introduced regarding the petitionee's violent attitude toward another patient who had made homosexual advances toward him. Evidence was also presented of a violent attitude toward a nurse whom he perceived to be the one responsible for transferring him to a more secure unit, after he expressed his feelings about the other patient. In addition, there was evidence that the petitionee's violent characteristics were very prevalent during a brief period of time when he refused to take his prescribed medications. The court heard testimony from the petitionee's psychiatrist as well as from a psychiatric aide who witnessed the petitionee's behavior. Accordingly, we find that, in viewing the evidence in its totality, it was

sufficient to prove by a preponderance of the evidence that the petitionee presented a potential danger to himself or to others.

The final issue presented for our review is a constitutional one: whether the petitionee's equal protection or due process rights were violated in this proceeding for involuntary commitment. *See* N.H. CONST. pt. I, arts. 1, 12 and U.S. CONST. amend. XIV. We hold that the due process issue was not properly raised below and, therefore, will not consider it. *See Daboul v. Town of Hampton*, 124 N.H. 307, 471 A.2d 1148 (1983).

■■ We find the equal protection claim to be without merit. The petitionee does not claim that his equal protection rights have already been violated. Rather, he contends that there is a *potential* for violation because the statutes treat individuals differently, depending upon their admittance to a facility controlled by the mental health services system or by the department of corrections. While we will not allow persons similarly situated to be treated differently under the statute, *State v. Callaghan*, 125 N.H. 449, 451, 480 A.2d 209, 210 (1984), we do not find that to be the case here. The committal statute requires that a person confined within the mental health services system be provided with a treatment plan and follow-up treatment after that plan is established. RSA 135-B:44. RSA 622:46 also requires that the commissioner of the department of corrections, in consultation with the SPU director, establish treatment standards for the operation of the SPU. In addition, the regulations for the department of corrections require that each individual in the SPU be provided with a treatment plan, but do not specifically require that the treatment plan be implemented. Presumably, if the legislature specifically required treatment standards to be prepared for the SPU, it intended that such treatment standards be developed and enforced. Lack of implementation of the regulations adopted by the department of corrections would render the treatment plans meaningless, which, in turn, would render the standards required by the statute meaningless. *See Kalloch v. Board of Trustees*, 116 N.H. 443, 362 A.2d 201 (1976) (court will presume legislature will not do a meaningless act). We conclude that treatment plans must be implemented in order to meet statutory requirements. Accordingly, we hold that the statute does not discriminate against similar classes of persons with regard to treatment plans and is constitutional. No equal protection violation has occurred.

We therefore affirm the decision of the probate court.

*Affirmed.*

All concurred.