Carroll
No. 90-350

### THE STATE OF NEW HAMPSHIRE

v.

### LEWIS ZORZY

March 11, 1993

*John P. Arnold*, attorney general (*John A. Stephen*, assistant attorney general, on the brief), by brief for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief for the defendant.

HORTON, J.  The defendant, Lewis Zorzy, was convicted of perjury following a jury trial in Superior Court (*Mohl*, J.). On appeal, he contends that his rights to due process and a fair trial were violated

when, following a bail hearing prior to trial, the presiding judge failed to order an evidentiary hearing to determine whether he was competent to stand trial. We affirm.

The roots of this case are traceable to a private criminal complaint which the defendant brought against three individuals prior to 1987. The complaint was dismissed, and in March 1987, the three individuals brought a malicious prosecution suit against the defendant. On March 26, 1987, a Carroll County sheriff served a civil writ of summons at the defendant's home. The defendant did not respond to the summons, or to subsequent motions and documents served at his address, and the plaintiffs received a judgment in their favor. The defendant acknowledged the pendency of the civil proceedings only after the plaintiffs, to satisfy their judgment, attached real estate belonging to the defendant. The defendant filed a formal motion to strike in which he made the following claims: (1) that he never received notice of the plaintiffs' writ of summons; (2) that the plaintiffs' counsel had failed to alert him of the pending malicious prosecution suit and the consequences of not appearing; and (3) that he had no notice of the civil action until April 1989. The defendant attested to the truth of these claims before a notary in May 1989. However, the claims were refuted by evidence that in April 1987, the defendant had filed a complaint with the professional conduct committee which contained a copy of the writ of summons he denied having received. On the basis of this evidence, a Carroll County grand jury indicted the defendant for perjury.

Prior to trial, the State moved to increase the defendant's bail, alleging that the defendant had contacted a member of the grand jury that had indicted him for perjury. At an evidentiary hearing on the motion before the Superior Court (*O'Neil*, J.), the State called as witnesses the grand jury foreman and his wife. They testified that on December 26, 1989, the defendant had appeared at their home and had attempted to question the foreman about his signature on the defendant's indictment. The defendant, who was then seventy-six years old, appeared *pro se* at the hearing. Throughout the proceeding, he ignored the court's repeated warnings that it would entertain only matters relevant to the issue of bail, and argued vociferously that the prosecution was illegal because the prosecuting attorney, Warren Lindsey, had signed the indictment as the county attorney when, in fact, he was the assistant county attorney. The defendant accused Lindsey of being an "illegal officer of th[e] court" and of "taking money," and claimed that the entire prosecution was "bogus from the start." The defendant also badgered the witnesses about

matters wholly unrelated to either his bail, or the underlying criminal charge. For example, on the basis of his having seen a car with New Jersey license plates parked in front of the foreman's home, the defendant accused him of illegally operating a car in New Hampshire. The defendant's behavior prompted the court to warn that it would terminate the hearing if the defendant continued to "make a mockery out of [the] courtroom." Finally, while testifying on his own behalf, the defendant suggested that the prosecution was the result of a "personal vendetta" held against him by local and State officials who were angry because he had "squak[ed] [*sic*] about the police budget at the town meeting."

At the conclusion of the bail hearing, the following colloquy took place:

"[STATE]: I'm concerned about what's gone on here today and, frankly, I don't know whether we have a situation where Mr. Zorzy should be evaluated, to be quite frank. And if he can turn around with one hand and say something happened, and then that it didn't happen with the other hand, I'm deeply concerned about his mental state.

THE COURT: File your formal motion. I think you have to, because I think he has a right to be heard on it. He has a right to notice and maybe you're right.

[DEFENDANT]: Your Honor, there's Mr. Lindsey's office, right? He is not even a legally appointed Assistant County Attorney. I've got all the papers from Mr. Leidinger. All that evidence I want to prove here. He's not even a legal officer of the court. That's from Mr. Leidinger's office.

THE COURT: I'm rapidly coming to the conclusion that you may have some problems with your noggin.

[DEFENDANT]: No, I don't. It's just that I'm—I have the common sense and a little intelligence to look up and see that I'm getting prosecuted—illegally prosecuted here.

THE COURT: You also have a propensity towards agitation and aggravation and everything else that goes with it. As far as what you are alleging here, at least from the outset, you're out in left field without a glove."

The State did not file a motion for a competency hearing, and the superior court did not order such a hearing. The defendant did not claim that he was incompetent to stand trial, although at the start of trial he moved for a continuance so that he could receive a psycho-

logical evaluation of his capacity to recall past events. The defendant intended to use the evaluation to support his defense that he did not have the requisite mental state to commit perjury. The trial court denied the motion, and the jury ultimately convicted the defendant of perjury.

The issue before this court is whether the defendant was denied the right to due process and a fair trial when the superior court did not order an evidentiary hearing to evaluate his competence to stand trial. The defendant contends that his conduct during the bail hearing should have alerted the superior court to doubts as to his mental competence.

■ The mental competence of a criminal defendant is "an absolute basic condition of a fair trial." *State v. Champagne*, 127 N.H. 266, 270, 497 A.2d 1242, 1245 (1985) (quotation omitted). Due process guarantees under both the Federal and State Constitutions protect defendants from standing trial if they are legally incompetent. *See State v. Bertrand*, 123 N.H. 719, 725, 465 A.2d 912, 914 (1983); *Pate v. Robinson*, 383 U.S. 375, 378 (1966).

■ The test for competency, as formulated by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402, 402 (1960), and adopted by this court, is two-pronged. *See Champagne*, 127 N.H. at 270, 497 A.2d at 1245. "First, the defendant must have a sufficient present ability to consult with and assist his lawyer with a reasonable degree of rational understanding." *Id.* Second, the defendant must have a factual as well as rational understanding of the proceedings against him. *Id.* The State has the burden of proving by a preponderance of the evidence that the defendant is competent to stand trial. *Id.*; *Bertrand*, 123 N.H. at 727, 465 A.2d at 916. We examine the defendant's due process claim first under part I, article 15 of the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983). Since we find in this case that the fourteenth amendment to the United States Constitution provides no greater protection to the defendant than article fifteen, *see Champagne*, 127 N.H. at 270, 497 A.2d at 1245; *State v. Faragi*, 127 N.H. 1, 8–9, 498 A.2d 723, 729 (1985), we need not conduct a separate due process analysis under the Federal Constitution. *See Ball*, 124 N.H. at 231–32, 471 A.2d at 350–51.

■ Under the New Hampshire Constitution, a defendant's due process right not to be tried while incompetent is bolstered by the procedural requirement that the trial court must, "on [its] own initia-

tive, order an evidentiary hearing whenever a bona fide or legitimate doubt arises whether a criminal defendant is competent to stand trial." *Bertrand*, 123 N.H. at 725, 465 A.2d at 914. A defendant's competency is measured by his abilities at the time of the trial proceeding. *See United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986), *cert. denied*, 479 U.S. 1036 (1787).

█ █ As the trial court is in the best position to evaluate the criminal defendant's behavior, we grant deference to its decision regarding the need for a competency hearing. *See id.* In determining whether to order a competency hearing, the trial court should consider "'evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competency.'" *Bertrand*, 123 N.H. at 725, 465 A.2d at 915 (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). Where a trial court has before it only a "tentative speculation" that the defendant is incompetent, it need not order an evidentiary hearing into the defendant's competence. *Faragi*, 127 N.H. at 10–11, 498 A.2d at 730; *see also Vamos*, 797 F.2d at 1150 ("some degree of mental illness cannot be equated with incompetence to stand trial"). In addition, a trial record void of any indication that the defendant could not assist in his defense, or rationally comprehend the nature of the proceedings, "provides substantial evidence of the defendant's competence." *Vamos*, 797 F.2d at 1150.

█ Upon review of the bail hearing record, we do not find sufficient evidence to raise a bona fide doubt as to the defendant's competency to stand trial. Thus, the superior court did not err when it failed to order an evidentiary hearing to evaluate the defendant's competency to stand trial. The defendant exhibited disruptive and often annoying behavior at the bail hearing, but he appeared to have a factual as well as rational understanding of the proceedings against him. He appreciated that the focus of the hearing was the State's claim, as corroborated by the grand jury foreman, that the defendant had unlawfully contacted a grand juror when he visited the foreman at his home. The defendant sought to defeat the State's claim by arguing that when he approached the grand jury foreman, he had not realized that he was contacting the foreman *at his home*. This defense, if irrelevant to the substance of the State's claim, was not irrational. In addition, although the defendant was of advanced age, there was no evidence of a history of mental illness. Finally, the superior court's observation that the defendant may have had "problems with [his] noggin" could be regarded as an attempt to chide the defendant for his obstinate refusal to comply with court decorum. At

best, the comment raises no more than a "tentative speculation" that the defendant was incompetent. *See Faragi*, 127 N.H. at 10–11, 498 A.2d at 730.

*Affirmed.*

All concurred.