Strafford
No. 98-481

THE STATE OF NEW HAMPSHIRE

v.

WALTER HAYCOCK

February 2, 2001

*Philip T. McLaughlin*, attorney general (*Richard J. Lehmann*, assistant attorney general, on the brief and orally), for the State.

*Stan Hawthorne*, of Wolfeboro Falls, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Walter Haycock, was convicted after a superior court jury trial of accomplice to second degree assault. *See* RSA 631:2 (1996); RSA 626:8 (1996). On appeal, he challenges the Trial Court's (*Coffey*, J.) order finding him competent to stand

6

trial, and the Trial Court's (*Mohl*, J.) order denying his request for a jury instruction on the use of force in defense of another. We reverse and remand.

## I. Competency

We first address the defendant's argument that the trial court erred in finding him competent to stand trial. At a pre-trial hearing on competency, the only witness to testify was the defendant's expert, Dr. Craig E. Stenslie. The defendant also introduced two psychological evaluations which Dr. Stenslie had completed in the six months prior to the hearing.

In his evaluations, Stenslie concluded that the defendant was incompetent to stand trial. He testified, consistent with his reports, that the defendant had a factual, but not a rational, understanding of the proceedings against him and that he did not have sufficient present ability to consult with his attorney. *See State v. Zorzy*, 136 N.H. 710, 714 (1993). The State produced no evidence except testimony elicited from Dr. Stenslie during cross-examination and *voir dire*. The court found the defendant competent.

On appeal, the defendant alleges violations of due process under both the State and Federal Constitutions. We analyze the defendant's constitutional claims under the New Hampshire Constitution, relying on cases interpreting the Federal Constitution only to aid in our analysis. *See State v. Ball*, 124 N.H. 226, 232-33 (1983). Because the Fourteenth Amendment to the United States Constitution provides no greater protection on this issue than Part I, Article 15 of the New Hampshire Constitution, we need not engage in a separate federal analysis. *See Zorzy*, 136 N.H. at 714.

The mental competence of a criminal defendant at the time of trial is "an absolute basic condition of a fair trial." *Id.* (quotation omitted); *see State v. Champagne*, 127 N.H. 266, 270 (1985). A defendant is competent if he has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,'" and if he has "'a rational as well as [a] factual understanding of the proceedings against him.'" *State v. Champagne*, 127 N.H. at 270 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). By rational understanding, we mean that the defendant must have "sufficient contact with reality." *Lafferty v. Cook*, 949 F.2d 1546, 1551 (10th Cir. 1991). The State bears the burden of proving both of these elements by a preponderance of the evidence. *See Zorzy*, 136 N.H. at 714.

In finding the defendant competent, the trial court reasoned:

> [The defendant] "tends to ramble" and Dr. Stenslie testified that [his] thoughts are "tangential" and "paranoid"; while the Court notes that Dr. Stenslie uses these terms in the clinical, not colloquial, sense, certain other findings are more significant.
>
>     . . . [H]e is quite clear in his responses that he understands the factual nature of the charges against him, understands the allegation of assault, and has requested that his lawyer do all that he can to "fight this case" because he "never touched the man" in question, indicating that he comprehends the elements of the crime of assault. Additionally, he understands the concepts of crime and punishment . . . . He also understands the roles of his attorney, the prosecutor, and the judge; despite his seemingly paranoid thoughts about the County Attorney's Office, he is clear as to their role. Dr. Stenslie himself concluded that the Defendant had a "factual understanding of the legal proceedings" and this Court finds that [the defendant] has a rational and factual understanding of the proceedings.

We conclude that the trial court failed to apply properly the second prong of the *Champagne/Dusky* standard. The court concluded that the defendant had a rational understanding of the proceedings against him and, by doing so, rejected Dr. Stenslie's expert opinion without making any findings to support its conclusion. The court's order implicitly accepts Dr. Stenslie's conclusions that the defendant's thoughts were "paranoid" and "tangential," but then states that "certain other findings" were "more significant." Specifically, the court found that the defendant "understands the factual nature of the charges against him, understands the allegation of assault, . . . has requested that his lawyer do all he can to 'fight this case' because he 'never touched the man,'" and that he "understands the concepts of crime and punishment." The court also found that "despite his seemingly paranoid thoughts about the County Attorney's Office," he "understands the roles of his attorney, the prosecutor, and the judge."

██ That the defendant can "recite, civic-class style, the cast of characters, their roles and the object of the proceedings," *Champagne*, 127 N.H. at 271, does no more than demonstrate the defendant's *factual* understanding of the proceedings against him, an issue which is not in dispute. Nowhere does the court make

specific findings supporting its conclusion that the defendant has a rational understanding of the proceedings against him. *See State v. Bertrand*, 123 N.H. 719, 728 (1983). Moreover, such a conclusion would be directly contrary to the only expert opinion offered at the hearing. As such, we conclude that the trial court erred by "focusing narrowly upon the defendant's factual understanding capabilities" in finding the defendant competent to stand trial. *Champagne*, 127 N.H. at 271 (emphasis omitted).

The State argues that the trial court was within its discretion to reject Dr. Stenslie's testimony because competency to stand trial is a legal, not a medical concept. *See Bertrand*, 123 N.H. at 726. The trial court should not "abdicate to psychiatrists [its] judicial responsibility to determine whether a criminal defendant is competent to stand trial." *Id.* When, however, a defendant establishes a *prima facie* case of incompetency through the introduction of uncontroverted expert testimony, the trial court should delineate its reasons for rejecting that testimony and those reasons must be supported by the record. *See Lagway v. Dallman*, 806 F. Supp. 1322, 1338 (N.D. Ohio 1992). The trial court has not done so in this case.

The State further argues that, although it has the burden to prove that the defendant is competent, it need not produce its own evidence to meet its burden of proof. We agree that, generally, a party may satisfy its burden of proof if the necessary evidence is introduced by his adversary and is sufficiently convincing and uncontroverted. *See* 29 AM. JUR. 2D *Evidence* § 158, at 185 (1994). The trial court has not, however, made the necessary findings to support its conclusion that the State met its burden by relying solely on Dr. Stenslie's testimony.

Finally, the State argues that even if the court erred in finding the defendant competent after the pretrial competency hearing, the court independently found the defendant competent at trial three months later. During a bench conference in the middle of trial, defense counsel again raised the issue of the defendant's competency. The trial court summarily denied the defendant's request, stating that "everything this witness has shown suggests to me that Judge Coffey made the right determination with respect to this witness's competence."

█ While "[a] defendant's competency is measured by his abilities at the time of the trial proceeding," *Zorzy*, 136 N.H. at 715, we conclude that in this case, it is impossible to determine the degree to which the trial court's competency determination at trial was influenced by the court's erroneous pretrial determination. As such,

we cannot agree that the court independently found the defendant competent at trial.

Because there is a record of the pretrial competency hearing, the trial court on remand should consider whether a retrospective determination based on the application of the correct standard can be made, and, if so, make such a determination. *See State v. Stiles*, 123 N.H. 680, 685 (1983). If such a determination is not possible, a new trial is required. *See id.* Because the defendant's remaining argument will likely be raised again if a new trial is required, we next address that argument.

## II. Jury Instructions

The defendant argues that the trial court erred in denying his request for a jury instruction on the use of physical force in defense of another. Specifically, he argues that because there was "some evidence" that he struck the victim in defense of his son who had just been engaged in a physical altercation with the victim's friend, he was entitled to a jury instruction on the defense.

Although the scope and wording of jury instructions is generally within the sound discretion of the trial court, the court "must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense." *State v. Jaroma*, 137 N.H. 143, 153 (1993) (quotation omitted). By "some evidence," we mean that there must be more than a "minutia or scintilla of evidence." *State v. Cote*, 143 N.H. 368, 378 (1999) (quotation omitted).

On December 30, 1995, the defendant and his son were at a bar in Farmington. Also at the bar were the victim and two of the victim's friends. While at the bar, the defendant's son knocked a beer out of one of the victim's friend's hands and pushed him. Later, as the men were leaving the bar, the defendant's son assaulted one of the victim's friends and an altercation ensued. Although there is some dispute about what happened next, the defendant testified that the victim's friend put the defendant's son in a bear hug and the defendant responded by attempting to pry his son from the man's grasp. As he did so, the victim struck the defendant in the chest and the defendant struck the victim back. The defendant's contact with the victim forms the basis of the indictment.

When asked on direct examination to explain the incident, the defendant testified:

> I opened the bar door . . . [a]nd I see an altercation over there . . . and I looked over, and I see my son over there arguing with some big guy . . . . I said, "What the hell is

going on?" By then, this big guy had got him in a bear hug. So first it come to me, boy, he's going to crush my son, you know, as big as he is. So I started walking over, and when I went to grab [my son] to break it up, by the shoulder, he threw [my son] into me, you know, get him away from him, and when he done that, I had [my son] by the shoulder, and my cane in my other hand, that I walk with in the left. So I went to pull [my son] around, and then [the victim] whacked me in the chest, and I just let go of [my son], and I said, " . . . get the hell home . . . ." So [my son] immediately started walking up the street to go home. I reached down, picked up my cane[.] By then, [the victim] was back over by the doorway . . . .

Defense counsel asked the defendant what he did "right after" the victim hit him in the chest. The defendant responded, "I bent over, like that, because I dropped my cane because it knocked the wind out of me, just about, and I come up with a right as hard as I could, which isn't very hard, and that was the end of it."

RSA 627:4, I (1996) provides in part:

A person is justified in using non-deadly force upon another person in order to defend himself or a third person from what he reasonably believes to be the imminent use of unlawful, non-deadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose.

We conclude that the defendant's testimony provides "some evidence" that the defendant assaulted the victim in defense of his son and, as such, the trial court erred in denying the defendant's request to provide the instruction to the jury. The defendant's testimony reflects that just prior to striking the victim, the defendant had watched one of the victim's friends scuffle with and "bear hug" his son. The defendant testified that he was concerned that the victim's friend would "crush [his] son." Moreover, the defendant testified that when he attempted to pry his son loose from the victim's friend's grasp, the victim, apparently acting in concert with his friend, struck the defendant. Thus, contrary to the State's assertion, the jury could have concluded from the defendant's testimony that he reasonably believed not only that the victim's friend was a threat to his son, but that the victim, by acting in concert with his friend, posed a threat to his son.

The State next argues that the defendant was not entitled to the instruction because he testified that he was not "defending" his son and that he struck the victim in retaliation for the victim striking him. It is apparent from the record that the defendant testified inconsistently on numerous occasions. It is, however, the province of the jury to reconcile the defendant's inconsistent trial testimony. Therefore, for our purposes, the sole question is whether the defendant introduced "some evidence" to support a rational finding in favor of the defense, not whether the evidence in support of the defense is uncontradicted.

■ Finally, the State argues that the jury could not have reasonably found that the defendant's conduct was for the purpose of preventing harm to his son because the defendant's son was no longer involved in the altercation when the defendant struck the victim. We disagree. Given the proximity in time between when the defendant extricated his son from the victim's friend's hold and when the defendant struck the victim, a jury could have reasonably concluded that the defendant's motive in assaulting the victim was to prevent further harm to his son.

*Reversed and remanded.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.