Hillsborough-southern judicial district
No. 2000-058

THE STATE OF NEW HAMPSHIRE

v.

KE TONG CHEN

Argued: September 18, 2002
Opinion Issued: November 26, 2002

*Philip T. McLaughlin,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Richard E. Samdperil,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Ke Tong Chen, appeals his first degree assault conviction. *See* RSA 631:1 (1996). He argues that the Superior Court (*Dalianis,* J.) erred when it found him competent to stand trial, and the Superior Court (*Brennan,* J.) erred when it ruled that he could not raise the defense of self-defense. We affirm.

On November 30, 1997, the defendant and victim were both cooks at the Ming Garden restaurant in Nashua. The defendant boiled vegetable oil in his wok and then used a saucepan to throw the hot oil onto the victim's head. When the victim turned around, the defendant threw more oil at his face. The victim turned again to run away, and the defendant threw more oil on his back. As the victim tried to run out through the back door, he fell to the floor. The assault left him with third-degree burns covering thirty to forty percent of his body.

The defendant first argues that the trial court erred when it found him competent to stand trial. Mental competence is a basic condition of a fair trial, and if a criminal defendant is legally incompetent then he or she has a constitutional right not to be tried. *State v. Gourlay,* 148 N.H. 75, 77 (2002). The defendant bases his argument on the trial court's application of New Hampshire's two-pronged competency test, which is predicated on Part I, Article 15 of the New Hampshire Constitution. He does not make a federal constitutional argument; thus we do not engage in a separate federal analysis. *See State v. Landry,* 146 N.H. 635, 636 (2001).

■ The two-pronged test for competency inquires whether a defendant has: (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; and (2) a rational as well as a factual understanding of the proceedings against him. *State v. Champagne*, 127 N.H. 266, 270 (1985); *see also Dusky v. United States*, 362 U.S. 402, 402 (1960). "The State bears the burden of proving both of these elements by a preponderance of the evidence." *State v. Haycock*, 146 N.H. 5, 6 (2001).

■ Because the defendant challenges only the trial court's application of the second prong of the competency test, we focus our analysis upon whether a preponderance of the evidence supported a finding that the defendant had a factual as well as rational understanding of the proceedings against him. *Cf. Gourlay*, 148 N.H. at 77. "By rational understanding, we mean that the defendant must have sufficient contact with reality." *Haycock*, 146 N.H. at 6 (quotation omitted). A defendant's factual understanding of the proceedings against him may be demonstrated by an ability to identify the individuals involved in a legal proceeding, their roles and the object of the proceedings. *See id.* at 7.

Two experts testified at the May 28, 1999 competency hearing: Dr. James J. Adams, M.D. and Dr. Eric G. Mart, Ph.D. Dr. Mart, who testified on behalf of the defense, evaluated the defendant once, in July 1998. Dr. Adams, the State's Chief Forensic Examiner, first evaluated the defendant in August 1998. After their initial examinations of the defendant, both doctors agreed that the defendant was not competent to stand trial. Concerned that the defendant might be malingering, Dr. Adams felt that the defendant should be psychiatrically hospitalized and re-evaluated. Dr. Adams observed the defendant while he was hospitalized at the Secure Psychiatric Unit (SPU) and re-evaluated him in February and May 1999.

The record includes the following evidence. Both doctors agreed that the defendant was uncommunicative, extremely uncooperative and claimed a lack of knowledge of things that anyone, regardless of their mental state, should be expected to know. Both doctors also agreed that there was no evidence of brain damage, mental retardation, psychosis or major mental illness, and that the defendant appeared to have low to normal intelligence. Moreover, both doctors agreed that the defendant was ignorant, at the time of the competency hearing, of the United States legal system. Thus the court noted that the ultimate issue was whether he refused to learn or was incapable of learning.

Neither doctor was certain about the type of disorder, if any, the defendant was suffering. Dr. Mart recognized the possibility that the

defendant was malingering, but was inclined to conclude that his affect was the result of a conversion disorder. By contrast, Dr. Adams opined that the defendant was not suffering from a true unconscious conversion disorder because he was able to alter his apparent condition depending upon the circumstances. It was evident, however, that while the defendant worked and communicated effectively at the SPU, he reverted to his uncooperative, uncommunicative style of interaction when confronted with people involved in the legal process.

■The court found that the defendant was competent to stand trial. It found that he had functioned effectively in this country for ten years: he worked steadily as a cook, acquired a driver's license, engaged in banking transactions, and successfully eluded the police for over three months after the assault. The court found that he was not brain damaged, did not have any major mental illness and had low to normal intelligence. Furthermore, the defendant had functioned well at the SPU, where he was observed for almost six months prior to the hearing, fulfilling his work responsibilities, and presenting as energetic and able. While the defendant communicated openly and regularly with hospital staff and other patients, he became uncooperative and uncommunicative when confronted with his legal dilemma.

Furthermore, the trial court noted that his refusal to engage in the process designed to determine his competency suggested competency. The court found that the defendant's refusal to cooperate with the evaluation process was not a result of incapacity, but was rather opportunistic malingering. Therefore, the court concluded that the defendant was competent to stand trial.

The evidence supports the trial court's findings, and the findings support the conclusion that the defendant had sufficient contact with reality and an ability to understand the object of the proceedings and the identity and roles of the individuals involved. This demonstrates that the defendant had both a factual as well as a rational understanding of the proceedings against him. Thus, the evidence supports the conclusion that the defendant was competent to stand trial.

We turn now to the defendant's argument that the trial court violated his due process rights by refusing to allow him to rely on the defense of self-defense.

The defendant did not file a self-defense claim prior to trial. After the jury viewed the scene of the crime, and the State had examined two witnesses and was part-way through its examination of the victim, the defendant verbally filed a self-defense claim with the court. The

defendant's counsel attributed the tardiness in filing to the difficulties he had communicating with the defendant. The court decided that it would not consider self-defense because, to the State's prejudice, the defendant did not raise it until the middle of the trial in violation of Superior Court Rule 101. The trial court ruled, however, that the defendant could fully examine witnesses to elicit testimony relevant to self-defense. Furthermore, the court noted that the jury would have the power to nullify.

The defendant argues that the trial court's ruling violated his due process rights by precluding him from arguing self-defense and receiving a jury instruction on the issue. *See* N.H. CONST. pt. I, art. 15. "Because the defendant relies solely upon the State Constitution, we do not engage in a separate federal due process analysis[.]" *Landry*, 146 N.H. at 636.

A defendant intending to assert any criminal defense must file a notice of that intention with the court and the prosecution

> within 10 days after the entry of a not guilty plea or within such further time as the Court may order for good cause shown. If the defendant fails to comply with this rule, the Court may exclude any testimony relating to such defense or make such other order as the interest of justice requires.

SUPER. CT. R. 101; *but see* SUPER. CT. R. 98(B)(1) (requiring notice of defense within thirty days after entry of not guilty plea).

■ In applying Superior Court Rule 101, the trial court explicitly did not limit the defendant's ability to examine or cross-examine witnesses to elicit evidence regarding a self-defense claim. Although the defendant did not testify or offer any of his own witnesses, he cross-examined the victim regarding whether the defendant was acting in self-defense. Even if the trial court erred by not allowing the defendant to assert his claim of self-defense, it allowed the defendant to present evidence on the claim, and there was not enough evidence to support a self-defense jury instruction.

We will review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion. *State v. Laurent*, 144 N.H. 517, 522 (1999); *see also Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). The trial "court must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense." *Haycock*, 146 N.H. at 9 (quotation omitted). "By 'some evidence,' we mean that there must be more than a minutia or scintilla of evidence." *Id.* (quotation omitted). "[O]ur function in reviewing the trial court's refusal to

provide a requested self-defense instruction is to search the record for evidence supporting the defendant's request." *State v. McMinn,* 141 N.H. 636, 646 (1997) (quotation and bracket omitted). Subject to exceptions not applicable to this case, a person is entitled to use non-deadly force in self-defense from what he reasonably believes to be the *imminent* use of unlawful, non-deadly force by another person. *See* RSA 627:4, I. (1996).

In searching the record for evidence supporting the defendant's requested jury instruction, *see McMinn,* 141 N.H. at 646, we will search for evidence that the victim posed an imminent threat to the defendant. *See* RSA 627:4, I. The defendant draws our attention to an incident between the victim and the defendant one week prior to the hot oil altercation. This evidence does not support a determination that the defendant reasonably believed that the victim was imminently going to use unlawful force against the defendant, and that the defendant therefore threw boiling oil onto the victim three times in self-defense. The defendant also points to testimony that, as the assault began, a co-worker's attention was first drawn to the defendant and victim by the sound of some metallic object hitting the floor. He asserts that this could be consistent with a theory that the victim had used a kitchen tool as a weapon against the defendant. This speculation hardly rises to the level of even a scintilla of evidence. *See Haycock,* 146 N.H. at 9. Therefore, the defendant was not entitled to a jury instruction on the claim.

Even if the defendant had timely filed his claim of self-defense, there was no evidence to support that claim. Although "[t]he discovery of truth in criminal proceedings should not suffer by an overly technical application of . . . the rules of court," *State v. Cromlish,* 146 N.H. 277, 280 (2001), the trial court's application of Superior Court Rule 101 did not inhibit the discovery of truth.

*Affirmed.*

NADEAU, J., concurred; BARRY and COFFEY, JJ., superior court justices, specially assigned under RSA 490:3, concurred.