NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2017-0665

KENNETH H. HART

v.

WARDEN, NEW HAMPSHIRE STATE PRISON

Argued: September 27, 2018
Opinion Issued: January 24, 2019

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the petitioner.

Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.

DONOVAN, J. The petitioner, Kenneth H. Hart, appeals an order of the Superior Court (Abramson, J.) denying his petition for a writ of habeas corpus alleging that he was incompetent to waive his right to counsel and represent himself at trial and on appeal following his convictions of multiple felonies in February 2000. We affirm.

I. Factual and Procedural Background

The record supports the following facts. In 1998, the petitioner was arrested and charged with two alternative counts of aggravated felonious

sexual assault (AFSA), one count of witness tampering, and one count of resisting arrest. Prior to trial, the petitioner was provided with court-appointed counsel, but he dismissed three of these attorneys and moved to represent himself at trial. The State objected and, after a hearing on the motion, the Trial Court (Barry, J.) ruled that "a 'bona fide and legitimate doubt' exists as to the [petitioner's] current competency to stand trial and particularly his ability to clearly and effectively waive his constitutional right to counsel" and ordered that the petitioner submit to a psychiatric evaluation.

Dr. Albert Drukteinis evaluated the petitioner and testified at a July 1999 competency hearing that he believed that the petitioner had a non-specific personality disorder that "did not rise to the level of a major mental illness" that would "prevent him from being competent to stand trial." Drukteinis also testified that, in his view, competency to defend one's self pro se required a higher competency threshold than the competency standard needed to stand trial and the petitioner's paranoid personality traits "would interfere with a meaningful or reasonable defense of himself." Drukteinis agreed with the Trial Court's (Groff, J.) characterization of his testimony that the petitioner would be incapable of effectively cross-examining witnesses as a result of his inability to focus on important issues in a meaningful way. The doctor nonetheless reaffirmed his opinion that the petitioner was competent to stand trial pursuant to State v. Champagne, 127 N.H. 266 (1985). The trial court found the petitioner to be competent, but deferred its consideration of the question of the petitioner's competency to waive his right to counsel.

The Trial Court (Groff, J.) subsequently held a motions hearing in August 1999 during which the court found that the petitioner maintained a sincere and unwavering desire to waive counsel and represent himself at trial. The court conducted a lengthy colloquy during which the petitioner acknowledged that he: (1) understood that he had an absolute right to be represented by counsel at the State's expense, if he could not afford to retain an attorney; (2) was aware and understood the maximum prison sentences that could be imposed upon conviction; (3) understood that he would be required to follow the applicable rules of evidence, select a jury, and examine witnesses; (4) would be required to conduct an opening statement and closing argument; and (5) understood that the court would not treat him differently than a licensed attorney and could not assist him with his defense. Following this colloquy, the trial court found that the petitioner was "aware of the serious nature of the charges against him, the potential sentence which may be imposed, the complex factual and legal issues presented by [his] case, and the serious limitations in acting as his own counsel." Finding that the petitioner had knowingly, intelligently, and voluntarily waived his right to counsel, the court granted his motion.

The trial court appointed standby counsel to assist the petitioner during trial. Following jury selection, standby counsel informed the trial court of his

"grave concerns" with the petitioner's ability and competency to represent himself after the petitioner refused to follow counsel's advice during jury selection. The petitioner objected and the trial court iterated its previous ruling that the defendant was competent to stand trial and competent to waive his right to counsel, and that he did so knowingly and intelligently. After an eight-day trial, the jury convicted the defendant of all charges. The trial court thereafter sentenced the petitioner to a 10 to 20 year prison sentence on the AFSA conviction, recommended that the petitioner complete the sex offender program, and imposed suspended sentences on the remaining convictions.

Following sentencing, the trial court appointed standby counsel for the petitioner to advise and assist him with the preparation of a notice of appeal. However, the petitioner was unwilling to follow counsel's advice and did not authorize counsel to draft the notice of appeal for him. Despite a series of orders issued by this court extending the deadline for the filing of either a notice of appeal or a motion to appoint counsel, no notice or motion was filed by the petitioner, or on his behalf. In February 2001, we ruled that the petitioner had waived any appeal of his convictions.

Since that ruling, the petitioner has filed numerous pro se pleadings unsuccessfully challenging his convictions in state and federal courts. In January 2017, the petitioner filed a complaint in the Superior Court (Schulman, J.) that the court construed as a petition for a writ of habeas corpus and appointed counsel to represent him. The petitioner's counsel thereafter filed an amended habeas petition challenging his conviction on the ground that the trial court erred in permitting the petitioner to represent himself at trial and for the purpose of filing a notice of appeal. The petitioner also argued that the trial court record does not reflect that he understood the significance and consequences of his decision to waive his right to counsel or that he knowingly and voluntarily waived this constitutional right. The State objected.

In October 2017, the Superior Court (Abramson, J.) (habeas court) denied the petition without a hearing. The court found that "between October 1998 and August 1999, [the] petitioner consistently maintained his desire to proceed pro se" and that prior to trial, the court thoroughly explained the dangers and disadvantages of self-representation to the petitioner. Thus, the court concluded that the petitioner knowingly, intelligently, and voluntarily waived his right to counsel. Relying on our decision in Champagne, the court also rejected the petitioner's argument that a heightened standard of competency must be applied to a defendant who seeks to represent himself at trial than the standard of competency necessary to stand trial. The court reasoned that the United States Supreme Court decision in Indiana v. Edwards, 554 U.S. 164 (2008), allows, but does not require, state courts to impose counsel on defendants who suffer from some mental illness but are otherwise competent to stand trial. Accordingly, the court determined that,

3

because the petitioner was found competent beyond a reasonable doubt to stand trial, he was competent to waive his right to counsel and, having done so, "he cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel.'" (Quoting United States v. Manjarrez, 306 F.3d 1175, 1180-81 (1st Cir. 2002)). This appeal followed.

## II. Procedural Posture on Appeal

Prior to addressing the parties' arguments, we note that this case stands in an unusual procedural posture. At oral argument, petitioner's counsel represented that his client had recently completed the maximum term of his sentences, was released from state prison, and was involuntarily committed to the New Hampshire Hospital. Given these circumstances, we requested that the parties submit their respective positions on whether our jurisdiction is affected by these recent events, or whether we should construe the habeas petition as a petition for a writ of coram nobis.

The petitioner argues that we should reformulate his appeal as a petition for a writ of coram nobis because doing so will not alter our review of his claims, his case presents important questions of law that both parties have fully litigated, and the completion of his sentence does not render his challenge to his conviction moot given the immediate consequences of that conviction. The State counters that the petitioner's habeas corpus claims are not preserved because he failed to raise them in a direct appeal of his convictions or by way of a timely motion for a new trial. The State further maintains that the petitioner's claims are moot because he has completed his sentence, and he is not entitled to coram nobis relief in light of his inability to justify his delay in failing to raise the issue of his competency and seek relief on that basis prior to the filing of his January 2017 petition. See State v. Widi, 170 N.H. 163, 168-70 (2017) (denying writ of coram nobis where defendant could not satisfy his burden of showing that sound reasons explained his failure to seek relief earlier). We disagree with the State.

We first address the State's preservation argument and its contention that the issues before us are moot. We have previously ruled that claims of ineffective assistance of counsel based upon alleged trial errors are not procedurally barred by the failure to raise those claims on direct appeal and, therefore, are eligible for review by way of a petition for writ of habeas corpus. See State v. Pepin, 159 N.H. 310, 312-13 (2009) (citing cases). Where, as here, the petitioner lacked the benefit of representation by counsel in his direct appeal, and he now argues that he was not competent to represent himself at trial or on appeal, we see no basis for procedurally barring his collateral attack in this case.

We also find that the case is not moot. In State v. Almodovar, 158 N.H. 548, 550 (2009), we concluded that the defendant's completion of his deferred

4

sentences did not render his appeal moot because the sentences carried potential future consequences and the defendant could file a writ of coram nobis. As in Almodovar, the petitioner's convictions here impose immediate consequences, such as lifetime sex offender registration, see RSA 651-B:6, I (Supp. 2018), and, perhaps, continued detention at the state hospital as a result of his involuntary civil commitment, see RSA ch. 135-C (2015 & Supp. 2018). Therefore, the petitioner's claims are not moot despite the fact that he has already served the maximum terms of the sentences that the trial court imposed on his underlying convictions.

We note that if the petitioner were solely challenging his detention and involuntary commitment at the state hospital, a writ of habeas corpus might be available to him to challenge that detention. Yet, we question whether his involuntary commitment meets the "in custody" condition to obtain habeas corpus relief given that: (1) the record before us sheds little light on whether the previous conviction was a basis for the petitioner's commitment; and (2) the petitioner now seeks a remedy, the vacation of his prior conviction, that may be unrelated to his current confinement. See Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (construing federal habeas corpus relief as requiring the petitioner be "'in custody' under the conviction or sentence under attack"). Indeed, the Maleng Court cautioned that the United States Supreme Court had "never held . . . that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has fully expired at the time his petition is filed." Id. at 491. Nonetheless, we need not answer this question because the writ of coram nobis may provide the petitioner with the remedy he seeks, despite the expiration of his sentences. See Wilson v. Flaherty, 689 F.3d 332, 339 (4th Cir. 2012) (recognizing the availability of coram nobis relief where a habeas corpus petitioner has served his sentence and is no longer in custody). In light of his present circumstances, and in the interest of judicial efficiency and economy, we will address the merits of the petitioner's claims by construing his petition as a writ seeking coram nobis relief. See State v. Santamaria, 169 N.H. 722, 724 (2017) (coram nobis is an extraordinary writ available to address errors when the petitioner is no longer in custody and, therefore, cannot avail himself of the writ of habeas corpus).

### III. Writ of Coram Nobis

We next address whether the writ of coram nobis provides a potential remedy to the petitioner. The writ of coram nobis "is of ancient lineage" with roots extending to sixteenth century English common law. United States v. George, 676 F.3d 249, 253 (1st Cir. 2012). At that time, appellate review of criminal convictions was generally unavailable once a case ended at the conclusion of the court's defined term and, thus, coram nobis provided "a narrow opportunity for a court to reconsider a final judgment that it had rendered in a previous judicial term." David Wolitz, The Stigma of Conviction: Coram Nobis, Civil Disabilities, and The Right To Clear One's Name, 2009

5

B.Y.U. L. Rev. 1277, 1283 (2009). The traditional writ was available primarily to address problems associated with the discovery of new facts that were unavailable to the petitioner and not considered by the original trial court. Id. Its original purpose "was to promote respect for the judicial process by enabling a court to correct technical errors in a final judgment previously rendered." George, 676 F.3d at 253.

Following the landmark case of United States v. Morgan, 346 U.S. 502 (1954), however, the writ of coram nobis became "available to correct violations of the Constitution and laws of the United States," in addition to correcting factual errors. Trujillo v. State, 310 P.3d 594, 598 (Nev. 2013) (citing cases); see Morgan, 346 U.S. at 512-13 (1954) (holding that coram nobis is available to correct a constitutional violation). Federal courts have since expanded the use of the writ beyond the reopening of a final judgment to correct technical errors and, in federal criminal cases, the writ is now available as a remedy of last resort for the correction of fundamental errors of fact or law.[1] George, 676 F.3d at 253.

Federal appellate courts have yet to develop a uniform approach to determine the precise circumstances under which coram nobis relief is appropriate. The First Circuit Court of Appeals has formulated a tripartite test that requires that a coram nobis petitioner: (1) explain his or her failure to seek earlier relief; (2) show that he or she continues to suffer significant collateral consequences occasioned by the final judgment; and (3) demonstrate that the judgment resulted from an error of the most fundamental character. Id. Other federal appellate courts have recognized comparable elements to the writ. See id. (citing cases). We have not yet had the occasion to develop a definitive test or analytical framework to help guide our decision-making on this topic. See Widi, 170 N.H. at 166-67; Santamaria, 169 N.H. at 724.

We recently recognized that the common law writ of coram nobis is available in New Hampshire as an extraordinary writ when an individual is no longer in the State's custody and sound reasons exist for a petitioner's failure to seek appropriate relief earlier. Widi, 170 N.H. at 166; Santamaria, 169 N.H. at 724-26. In Santamaria, we found that the writ existed within the body of the English common law prior to the adoption of our constitution and its use would not conflict with other specific rights guaranteed by our constitution.[2] Santamaria, 169 N.H. at 725 (comparing coram nobis with N.H. CONST. pt. I,

---

[1] As we have previously recognized, federal courts nevertheless grant coram nobis relief sparingly. The First Circuit Court of Appeals has described the writ as the "criminal-law equivalent" of a "Hail Mary pass," because granting such an extraordinary writ is reserved for the rarest of cases. George, 676 F.3d at 251, 254 (recognizing that "successful petitions for coram nobis are hen's-teeth rare.").

[2] As in Santamaria, we express no opinion as to whether the writ has a second source of authority in our State Constitution because the parties have not so argued. Accordingly, we address only the common law writ of coram nobis. See Santamaria, 169 N.H. at 724.

art. 15 (guaranteeing rights to accused) and pt. II, art. 91 (establishing the privilege and benefit of habeas corpus)). Just as the First Circuit's tripartite test requires an explanation for a party's failure to seek earlier relief, we similarly reasoned that to obtain coram nobis relief a petitioner must provide "sound reasons" for failing to seek appropriate relief earlier. Id. at 726; Widi, 170 N.H. at 166.

In Santamaria and Widi, however, we denied the writ because, in each case, the defendants had no reasonable excuse for not asserting their claims earlier. Widi, 170 N.H. at 168-70; Santamaria, 169 N.H. at 726-27. On this point, the State maintains that the petitioner has not "offered an adequate justification for his delay in raising this particular issue," despite having filed numerous post-conviction motions and petitions. We are not persuaded by this argument. The petitioner was not provided with counsel until 2017, and, if his underlying claim is correct and he was not competent to represent himself at trial or on appeal, then, arguably, a sound explanation exists for his failure to seek relief earlier. Accordingly, we will assume, under the unique circumstances of this case, that the petitioner had "sound reasons" for failing to challenge his eighteen-year-old conviction on the basis of his competency. Further, as we have previously noted, the petitioner continues to suffer significant collateral consequences as a result of his conviction, thereby satisfying the second element of the tripartite test established by the First Circuit. See George, 676 F.3d at 253.

We next consider whether the petitioner's conviction resulted from an error of the most fundamental character, see id., which requires that we address the merits of his collateral challenge to his convictions. Resolution of this question requires that we first consider whether the writ of coram nobis may be used to correct legal, as well as factual, errors, an issue we have not reached in our previous analysis of the coram nobis writ. See Widi, 170 N.H. at 168 (assuming, without deciding, that "all of the defendant's claims — whether based upon errors of law or fact — are cognizable in a petition for a writ of coram nobis"); Santamaria, 169 N.H. at 726 (not reaching issue of whether writ of coram nobis may be used to correct legal errors).

As in Widi, we assume, without deciding that the writ of coram nobis may be used to correct legal, as well as factual, errors. Widi, 170 N.H. at 168. Relying upon this assumption, we now address the question of whether the petitioner was subjected to a legal or factual error of a fundamental character, when the trial court found him competent to stand trial and to waive his right to counsel, and granted his repeated requests to represent himself at trial. In doing so, our standard of review for a denial of coram nobis relief is the same standard we employ when reviewing the denial of a writ of habeas corpus. Santamaria, 169 N.H. at 725. We accept the habeas court's factual findings unless they lack support in the record or are clearly erroneous, but review the habeas court's legal conclusions de novo. Id.

7

IV. Analysis of Petitioner's Claims

On appeal, the petitioner first argues that the habeas court erred as a matter of law. He maintains that both the United States Constitution and the New Hampshire Constitution require a higher minimum standard of competency for defendants who wish to represent themselves at trial than the standard of competency to stand trial, and, he asserts, the record of his trial establishes that he did not meet this higher standard. The petitioner also contends that, regardless of whether the law establishes a higher standard of competency for self-representing defendants at trial, the record does not establish that he understood the significance and consequences of his waiver of counsel, and thus, he did not knowingly waive his right to counsel. We disagree.

A. Analysis of Competency Claim under the Federal Constitution

Because the petitioner's claim is based upon the Edwards decision, and thus relies upon an interpretation of the Federal Constitution by the United States Supreme Court, we begin by first addressing his argument that the Federal Constitution mandates a higher minimum standard of competency for defendants who seek to represent themselves at trial than the minimum standard of competency to stand trial with the assistance of counsel. We note that the petitioner does not dispute that he was found competent to stand trial beyond a reasonable doubt. Nor does the petitioner challenge either Drukteinis' conclusions or the trial court's findings as to his competency. Instead, he maintains that, in the wake of the Edwards decision, a higher standard of competency is required, as a matter of federal law, to afford a mentally ill defendant the right to exercise his or her constitutional right to self-representation.

Prior to Edwards, the United States Supreme Court held that a defendant's choice to "conduct his own defense . . . must be honored out of 'that respect for the individual which is the lifeblood of the law,'" even though that choice may ultimately be to his own detriment. Faretta v. California, 422 U.S. 806, 834 (1975) (quoting Illinois v. Allen, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)). Federal courts have accordingly recognized that "[o]nce a defendant knowingly and intelligently foregoes his right to counsel, he 'cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."'" Manjarrez, 306 F.3d at 1180 (quoting Faretta, 422 U.S. at 834 n.46).

In Edwards, however, the Supreme Court acknowledged that exceptional circumstances may arise where a defendant's mental condition falls within a so-called "gray area" between the minimal standard that measures a defendant's ability to stand trial, pursuant to Dusky v. United States, 362 U.S. 402 (1960), and a different standard that measures a defendant's ability to self-

8

represent at trial.  Edwards, 554 U.S. at 169-70, 172, 177-78.  The Edwards Court held that the Federal Constitution "permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."  Id. at 178.  Notably, the Edwards Court did not rule that the Federal Constitution compels the application of a higher standard, even where a mental illness deprives the defendant of the "mental capacity to conduct his [or her] trial defense unless represented."  Edwards, 554 U.S. at 174, 177-78.

Many courts have interpreted Edwards as establishing a permissive rule — it allows, but does not require, state courts to impose counsel on defendants who suffer from a severe mental illness but who are competent to stand trial.  See, e.g., Panetti v. Stephens, 727 F.3d 398, 414 (5th Cir. 2013); United States v. Stafford, 782 F.3d 786, 791 (6th Cir. 2015); United States v. Ferguson, 560 F.3d 1060, 1070 n.6 (9th Cir. 2009); United States v. Berry, 565 F.3d 385, 391 (7th Cir. 2009); United States v. DeShazer, 554 F.3d 1281, 1290 (10th Cir. 2009).  By establishing this permissive rule, the Edwards court found, at the very least implicitly, that the Sixth and Fourteenth Amendments to the United States Constitution do not mandate the application of a higher standard of competency for defendants who wish to represent themselves at trial than the minimum standard of competency applied to defendants standing trial with the assistance of counsel.

Although the Edwards decision reflects a significant shift in the Supreme Court's jurisprudence on a criminal defendant's right to self-representation under Faretta, its holding is limited.  The new rule espoused in Edwards merely allows states to insist upon representation by counsel in the "exceptional context" when a criminal defendant is found competent to stand trial and insists on defending himself at trial, but is so severely mentally ill that his self-representation threatens the integrity of the trial process and creates a risk of an improper conviction or sentence.  Edwards, 554 U.S. at 176-78; see also Panetti, 727 F.3d at 414.  Indeed, the Supreme Court considered Edwards a "gray area" defendant who was twice found incompetent to stand trial based upon psychiatric evaluations that found that he suffered from a schizophrenic illness marked by delusions and serious thinking difficulties that, at times, made it impossible for him to cooperate with his attorney.  Edwards, 554 U.S at 168, 175.  The circumstances here differ in at least one important respect.

Whereas Edwards considered whether the trial court improperly imposed counsel upon a severely mentally ill defendant, the petitioner argues that the trial court here improperly allowed him to proceed to trial pro se.  Essentially, the petitioner asks us to find that Edwards stands, not just for the proposition that a trial court may insist upon representation for defendants who are incompetent to self-represent at trial due to a severe mental illness, but that it must impose counsel on him, and, having failed to do so, we must reverse the

9

petitioner's conviction and impose counsel on him in a new trial. Even if the petitioner fell within the "gray area" of competency contemplated by Edwards, he cites no federal authority, and we cannot find any federal support, for his proposition that a heightened standard of competency must be applied such that trial courts are required to force representation upon "gray area" defendants at trial. See DeShazer, 554 F.3d at 1290 (finding no case that reads Edwards differently than reaffirming that a court may constitutionally permit a defendant to represent himself provided the defendant is competent to stand trial). Because no such requirement exists under federal law, the petitioner's claim based upon the Federal Constitution cannot be sustained.

### B. Analysis of Competency Claim under the New Hampshire Constitution

We next address the petitioner's argument that the New Hampshire Constitution mandates a higher minimum standard of competency for self-represented defendants. Part I, Article 15 of the New Hampshire Constitution explicitly provides that "[e]very person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel . . . [and] this right he is at liberty to waive, but only after the matter has been thoroughly explained by the court." N.H. CONST. pt. I, art. 15. Part I, Article 15's inclusion of the right to waive counsel makes explicit what the Sixth Amendment to the United States Constitution made implicit — that criminal defendants must be permitted to exercise their autonomy to refuse the assistance of counsel and self-represent at trial.[3] Accordingly, we have previously upheld a defendant's right to waive his right to the assistance of counsel at trial, provided the defendant evinces an understanding of that right and asserts an unequivocal desire to relinquish it.[4] See State v. Towle, 162 N.H. 799, 803 (2011); State v. Thomas, 150 N.H. 327, 328-29 (2003); State v. Barham, 126 N.H. 631, 639 (1985).

Nonetheless, it cannot be questioned that a criminal defendant's mental competency to stand trial is an absolute basic condition of a fair trial. State v. Haycock, 146 N.H. 5, 6 (2001); see also Pate v. Robinson, 383 U.S. 375, 378 (1966). In Champagne, we applied the two-pronged test for competency set

---

[3] Thus, while some might be suspicious of the constitutional footing of the right to self-representation under the Federal Constitution because this right is not explicitly set forth in the text of the Sixth Amendment, see Edwards, 554 U.S. at 188 (Scalia, J., dissenting), there can be no such reservation as to the constitutional validity of this right under the New Hampshire Constitution.

[4] Indeed, we question the practicality of adopting a heightened standard, given the State Constitution's explicit protection of a criminal defendant's right to waive counsel. Should a trial court be confronted with the issue addressed in Edwards, for example, Part I, Article 15 will invariably require the court to attempt to determine which constitutional right requires more protection: the right to counsel or the right to self-represent. See Towle, 162 N.H. at 803 ("The two rights are mutually exclusive; the exercise of one right nullifies the other.").

forth in <u>Dusky</u>, which requires that a defendant: (1) have a sufficient present ability to consult with and assist his or her lawyer with a reasonable degree of rational understanding; and (2) have a rational as well as a factual understanding of the proceedings against him or her. <u>Champagne</u>, 127 N.H. at 270; <u>see also</u> <u>State v. Moncada</u>, 161 N.H. 791, 794-95 (2011) (applying the <u>Dusky</u> competency test to determine if defendant is competent to stand trial). The trial court in <u>Champagne</u>, however, was confronted with the question as to whether the <u>Dusky</u> standard applied to both the question of a defendant's competency to stand trial and his or her competency to plead not guilty by reason of insanity. <u>Champagne</u>, 127 N.H. at 274. We found no reason to distinguish the competency standards given the circumstances in that case, which involved a severely mentally ill defendant who had been diagnosed as psychotic and suffered from paranoid schizophrenia that had caused him to be admitted to psychiatric hospitals seven times in the ten years before he murdered his parents. <u>Id</u>. at 271. Instead, we ruled that a defendant could not be competent for some trial proceeding purposes and incompetent for others — "[h]e is either competent or he is incompetent." <u>Id</u>. at 274.

Arguably, the circumstances here present a more difficult question than the issue we addressed in <u>Champagne</u>. Whether a mentally ill defendant is competent to plead not guilty by reason of insanity, with the assistance of counsel, differs significantly from determining whether a mentally ill defendant, who is found competent to stand trial, is also competent to represent himself at trial, particularly when his mental condition may impair, among other things, his ability to effectively cross-examine witnesses. The petitioner contends that this concern exposes the infirmity of the <u>Dusky</u> competency to stand trial standard, because the <u>Dusky</u> standard incorporates a defendant's ability to communicate with counsel, and the assumed presence of counsel does not apply to self-representing defendants. We reject the premise of this reasoning, because, while the <u>Dusky</u> standard refers to a defendant's ability to consult with a lawyer, the standard's crucial inquiry focuses on whether the defendant possesses a reasonable degree of rational understanding. <u>Godinez v. Moran</u>, 509 U.S. 389, 403-04 (1993) (Kennedy, J., concurring). Thus, the focus of the <u>Dusky</u> formulation is on a particular degree of mental functioning that the ability to consult with counsel helps identify. <u>Id</u>. at 404. "The possibility that consultation will [or will not] occur is not required for the standard to serve its purpose. If a defendant elects to stand trial and to take the foolish course of acting as his own counsel, the law does not for that reason require any added degree of competence."[5] <u>Id</u>.

---

[5] The <u>Moran</u> Court also reasoned that a finding that a defendant is competent to stand trial is not "all that is necessary before he may be permitted to . . . waive his right to counsel . . . [because] a trial court must [also] satisfy itself that the waiver of his constitutional rights is knowing and voluntary." <u>Moran</u>, 509 U.S. at 400. "In this sense, there <u>is</u> a 'heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of <u>competence</u>." <u>Id</u>. at 400-01.

We have similarly reasoned that, in light of a criminal defendant's constitutional right to waive counsel and represent himself pursuant to the Sixth Amendment to the United States Constitution and Part I, Article 15 of the New Hampshire Constitution, a defendant must be afforded the right to self-representation "whether or not that representation will be to his detriment." Barham, 126 N.H. at 639. The petitioner nonetheless maintains that the application of a single competency standard fails to advance the interest of dignity and autonomy outlined in Faretta. He further asserts that our continued reliance upon the Dusky standard will permit "the spectacle of a mentally-ill and manifestly incapable defendant attempting to present a defense at trial." Again, we disagree.

When a mentally ill defendant exercises his or her right to self-represent at trial there will be more occasions for the trial court to observe the condition of the defendant and assess whether the conduct of the defense threatens the fairness, integrity, or validity of the proceedings. Trial courts are obligated to order an evidentiary hearing whenever there is sufficient doubt concerning a defendant's competence. See State v. Zorzy, 136 N.H. 710, 714-15 (1993) (criminal defendant's due process right not to be tried while incompetent is protected by the procedural requirement that the trial court must, sua sponte, order an evidentiary hearing whenever a legitimate doubt as to a defendant's competency to stand trial arises). Because the Dusky standard applies and may be challenged at any time during the prosecution of a defendant, from initial arraignment to the return of a verdict, the competency to stand trial standard includes a procedural safeguard whenever a bona fide doubt arises as to a defendant's mental competency. Therefore, when a mentally ill defendant exercises his or her right to self-represent at trial, the trial court must vigilantly scrutinize the ongoing proceedings so as to be able to address competency concerns in the event the defendant's mental condition jeopardizes the integrity, fairness and validity of the trial proceedings. In such a case, however, the standard by which competency is measured need not be altered.

The petitioner urges us nonetheless to adopt a heightened standard of competency for self-representation articulated by courts in other states. Yet, in one jurisdiction cited by the petitioner, a state statute dictated the circumstances under which a criminal defendant may be permitted to proceed to trial pro se. See State v. Lane, 707 S.E.2d 210, 219-20 (N.C. 2011) (prior to Edwards, North Carolina had already established a statutory framework and court precedent regarding pro se representation by criminal defendants). In another case decided prior to Edwards, the Wisconsin Supreme Court relied upon its precedents which established existing, higher standards for measuring competency for self-representation based on its own policy analysis. See State v. Klessig, 564 N.W.2d 716, 724 (Wis. 1997). Other jurisdictions, such as California, have not addressed this question in the context of a constitutional mandate explicitly protecting an individual's right to waive

counsel.  See People v. Johnson, 267 P.3d 1125, 1130-31 (Cal. 2012).
Compare N.H. CONST. pt. I, art. 15, with CAL. CONST. art. I, § 15.

The Connecticut Supreme Court, on the other hand, imposed a heightened standard of competency for a mentally ill defendant to self-represent at trial notwithstanding a constitutional provision that explicitly provides that "the accused shall have a right to be heard by himself and by counsel."  CONN. CONST. art. I, § 8; see State v. Connor, 973 A.2d 627, 644, 650-51, 657 (Conn. 2009) (ruling that, in addition to determining whether a mentally ill defendant is competent to stand trial, pursuant to Dusky, and to waive his or her right to counsel at that trial, the trial court must determine whether the defendant is competent to "'carry out the basic tasks needed to present his own defense without the help of counsel'" (quoting Edwards, 554 U.S. at 175-76)).  In doing so, however, the Connor Court rejected each of the constitutional arguments the petitioner raises before us and decided to impose the new standard pursuant to its supervisory authority.  Connor, 973 A.2d at 643.  The petitioner has not asked us to exercise our supervisory authority and, even if he had, we would decline any such invitation.

We are not persuaded that the reasoning applied by other state courts warrants the adoption in New Hampshire of a heightened standard of competency for mentally ill defendants who are found competent to stand trial and who invoke their constitutional right to waive counsel and self-represent at trial.[6]  Indeed, the Edwards Court expressly declined to adopt a specific standard in this type of exceptional circumstance and opted, instead, to invite States to do so.  See Edwards, 554 U.S. at 178 (refusing to adopt "a more specific standard").  We recognize that the New Hampshire Constitution may provide greater protection than the United States Constitution, see State v. Ball, 124 N.H. 226, 231-33 (1983), but "[h]aving the power to interpret some provisions [of the New Hampshire Constitution] as providing greater protection

---

[6] The petitioner also invites us to consider certain cautionary admonitions against the use of a single competency to stand trial standard issued by the Supreme Judicial Court of Massachusetts (SJC) given the shared language and history between the constitutional provisions of New Hampshire and Massachusetts.  See Comm. v. Means, 907 N.E.2d 646, 661 (Mass. 2009); Comm. v. Gibson, 54 N.E.3d 458, 467 (Mass. 2016).  However, these cases are readily distinguishable.  In each case, the SJC addressed the constitutionality of a trial court's order forfeiting a criminal defendant's right to counsel based upon the defendant's misconduct and without a sufficient inquiry (and, in one case, no inquiry) by the trial court of the extent to which the defendant's mental competency and psychological condition constituted mitigating factors that might bear on a forfeiture finding.  Means, 907 N.E.2d at 662; Gibson, 54 N.E.3d at 467-68.  Neither case stands for the proposition that a heightened standard of competency must be applied to a mentally ill defendant who is competent to waive his or her right to counsel, knowingly and intelligently does so, and invokes his or her right to self-represent at trial.  At best, the Means court ruled that, in the context of a defendant's forfeiture of his or her right to counsel, "it may be necessary during the [forfeiture] proceedings to revisit the issue of the defendant's mental competency to represent himself."  Means, 907 N.E.2d at 661.  Thus, after considering the concerns addressed by the SJC, we find that they are inapplicable to the circumstances in this case.

13

. . . does not mandate that we must interpret our constitution more broadly." State v. Canelo, 139 N.H. 376, 397-98 (1995) (Thayer, J., dissenting).

To the extent the petitioner argues the policy concerns relating to the mentally ill require a new, different or heightened standard, we observe that matters of public policy are best suited for the legislature, and we therefore leave the task of addressing the petitioner's concerns to that branch of the government. See Petition of Kilton, 156 N.H. 632, 645 (2007). In light of the New Hampshire Constitution's explicit protections of a defendant's right to waive counsel and the procedural safeguards that protect a criminal defendant's due process right not to be tried while incompetent, we conclude that the habeas court did not err in ruling that the New Hampshire Constitution does not mandate a heightened standard of competency for a mentally ill defendant who asserts his or her right to self-represent at trial. Therefore, the petitioner cannot meet his burden of establishing a fundamental error of law necessary to obtain coram nobis relief.

### C. Waiver of Right To Counsel

We next address the petitioner's argument that the trial court erred by permitting him to represent himself at trial, because the petitioner did not knowingly or intelligently waive his right to counsel due to his mental illness. Specifically, the petitioner argues that he did not sufficiently understand the consequences and significance of his decision to represent himself at trial and this error requires that he be granted a new trial. The State counters that the trial court complied with the constitutional standards that applied to these circumstances at the time the petitioner stood trial, the trial court thoroughly explained the dangers and disadvantages of self-representation to him, and we should therefore affirm the habeas court's ruling because the petitioner made his decision with his "eyes wide open." We agree with the State.

In a lengthy colloquy, the trial court informed the petitioner that he would be required to follow the rules of evidence and court rules without the assistance of the court. The trial court informed the petitioner that he would need to make opening statements, closing arguments and question witnesses directly and on cross-examination. The trial court also warned the petitioner of the risks associated with self-representation, including his potential inability to view the case objectively and dispassionately, as an attorney, and not as a party to the case, would do. After being warned of these dangers and disadvantages and after informing the court that he understood and appreciated them, the petitioner unequivocally waived his right to counsel.

The petitioner maintains, however, that the record does not establish whether he actually understood what it meant to represent himself because his performance and interaction with standby counsel throughout the trial demonstrates that he erroneously believed that standby counsel would "serve

as his 'advocate,'" "'run his case for him,'" and "had an obligation to provide effective assistance of counsel." However, the petitioner's statements reflect more on his lack of legal experience and a misunderstanding of the specific limits of standby counsel's role at trial as opposed to an essential misunderstanding of the consequences of his self-representation. The trial court found that the petitioner knowingly, intelligently, and voluntarily chose to waive his right to counsel and that he was competent to do so before the trial. The petitioner does not challenge these findings. Nor does the petitioner allege that the trial court erred by failing to order another competency evaluation in light of his conduct and performance at trial.

While the petitioner contends that his performance at trial "substantiated the concerns Dr. Drukteinis articulated" about his ability to defend himself, "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." Faretta, 422 U.S. at 834. Regardless, "a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation." Moran, 509 U.S. at 399, 400 (holding that the Dusky standard is adequate to determine whether a defendant is competent to choose to waive his or her right to counsel). Neither the due process clause of the United States Constitution, nor Part I, Article 15 of the New Hampshire Constitution mandate different standards of competency at various stages of or for different decisions made during a criminal proceeding. See id. at 404 (Kennedy, J., concurring); Champagne, 127 N.H. at 274 (holding "that a defendant cannot be competent for some trial proceeding purposes and incompetent for others").

We examine the validity of a defendant's decision to waive counsel at the time made and upon evidence produced during the trial court's colloquy with a pro se defendant to determine whether the defendant clearly and unequivocally expressed his desire to self-represent, understood the consequences, and knowingly and intelligently chose to waive his right to counsel. See State v. Russo, 164 N.H. 585, 593 (2013); State v. Ayer, 150 N.H. 14, 26 (2003) (trial court committed structural error by providing unwanted representation to defendant who had unequivocally waived his right to counsel). The exercise of the right to self-representation "must be scrupulously respected through all critical stages of his criminal prosecution and cannot be revoked without affirmative action by the defendant to rescind his waiver and to exercise his right to counsel." Russo, 164 N.H. at 593. Upon review of the record of the trial court's colloquy with the petitioner, we agree with the habeas court's finding and, thus, the trial court's conclusion, that the petitioner understood the implications of waiving his right to counsel and knowingly, intelligently, and voluntarily waived his right to counsel. Thus, the petitioner has not met his burden of establishing a fundamental error of law or fact necessary to obtain coram nobis relief.

15

For the foregoing reasons, we affirm the order of the habeas court.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.