NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
Case No. 2022-0647
Citation: State v. Smith, 2025 N.H. 1

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL R. SMITH

Argued: September 25, 2024
Opinion Issued: January 7, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Kevin P.J. Scura, assistant attorney general, on the brief and orally), for the State.

Newhall Law Firm, of Webster, New York (Jeremiah R. Newhall on the brief and orally), for the defendant.

COUNTWAY, J.

[¶1] The defendant, Michael R. Smith, appeals his convictions, following a jury trial in Superior Court (Howard, J.), on two counts of theft by unauthorized taking and three counts of attempted theft by unauthorized taking, all under circumstances warranting an extended term of imprisonment.

See RSA 629:1 (2016); RSA 637:3 (2016); RSA 651:6, I(l) (2016). He now appeals, challenging the trial court's determinations as to his competency and its order of restitution. We affirm.

[¶2] The following facts were found by the trial court or relate the contents of documents in the record before us. In June 2018, the defendant was indicted on the charges on which he was later convicted. In November, the defendant's counsel filed a motion to determine the defendant's competency. The Trial Court (Houran, J.) granted the motion and issued an order for a competency evaluation.

[¶3] The defendant was evaluated at the Office of the Forensic Examiner (OFE) and, in a report issued in March 2019, the forensic examiner opined that the defendant was malingering and concluded that he was competent to stand trial. The defendant's attorney requested a second evaluation, which the trial court granted. That evaluation was performed and, according to defense counsel's representation at a subsequent status conference, the defendant's evaluator also found the defendant competent. The Trial Court (Nadeau, C.J.) then entered an order on July 3, 2019 stating, "The defendant does not contest competency after receiving his own expert report. Accordingly, the defendant is found competent."

[¶4] Subsequently, defense counsel requested a status of counsel hearing due to his understanding that the defendant wished to proceed without representation. Following a hearing, the Trial Court (Houran, J.) found that the defendant's "decision to waive his constitutional right to counsel is a knowing, voluntary, and intelligent decision, as is his assertion of his right to proceed without counsel." Accordingly, the court granted that request and appointed the defendant's former attorney to serve as standby counsel. Nevertheless, in a subsequent order, the court noted that while the defendant had "been evaluated for competency to stand trial as a represented defendant, he has not been evaluated to proceed to trial as an unrepresented litigant." The court stated that it had "a bona fide concern as to whether [the defendant] is able to 'carry out the basic tasks needed to present his own defense without the help of counsel.'" (Quoting Indiana v. Edwards, 554 U.S. 164, 175-76 (2008).) Accordingly, the court stated that it would refer the defendant to the OFE "for an evaluation for competency to proceed to trial as an unrepresented defendant under the standard set out in" Edwards. Specifically, the court directed that the evaluation should address competence to perform both "decisional tasks" and "trial tasks" in accordance with Edwards.

[¶5] The court's separate order for a competency evaluation restated that the court sought to determine the defendant's competency to proceed to trial without representation by counsel. The court went further, however, and ordered:

2

If the evaluator opines that the defendant is currently not competent to stand trial as an unrepresented defendant, then the evaluator shall also include in the report an opinion on the defendant's ability to stand trial as a represented defendant and an opinion as to restorability pursuant to RSA 135:17 and 135:17-a.

[¶6] An evaluation was subsequently conducted in Florida, via Zoom, by Dr. Gregory DeClue, a licensed psychologist in that state. He filed a report opining that the defendant was "not competent to represent himself" but was "competent to decide whether to represent himself." He also opined that the defendant was "competent to proceed in this case." The evaluator summarized that the defendant "has a rational as well as factual understanding of the proceedings he faces, and he shows the ability to assist counsel in his defense."

[¶7] Following issuance of the report on the defendant's competency to self-represent, a hearing on that issue was held by the Trial Court (Nadeau, C.J.). Citing Hart v. Warden, N.H. State Prison, 171 N.H. 709 (2019), standby counsel noted that this court had "rejected the idea of separate standards for competency to stand trial and competency to self-represent" and stated, "I think we have to figure out how Hart v. Warden applies to this case." See Hart, 171 N.H. at 727 ("Neither the due process clause of the United States Constitution, nor Part I, Article 15 of the New Hampshire Constitution mandates different standards of competency at various stages of or for different decisions made during a criminal proceeding."). Accordingly, the trial court requested that the State and standby counsel submit memoranda on "the legal question of whether or not there should be separate standards."

[¶8] On May 24, 2021, the Trial Court (Howard, J.) issued an order stating, in relevant part:

After consideration of the forensic evaluation performed by Dr. Gregory DeClue, and the legal memoranda filed by the State and standby counsel, the court finds and rules that, because the defendant has been found by the court to be competent to stand trial, he is therefore competent to represent himself at this time. The court greatly appreciates the professional analyses of the Office of Forensic Examiner and Dr. DeClue. Their reports will provide effective guidance in monitoring the issue of competence as the litigation and trial develop.

[¶9] The case proceeded to trial with the defendant representing himself. He was convicted on all counts and now appeals.

[¶10] The defendant contends that the trial court erred each time it found him competent to stand trial. "We defer to the trial court's determination of competence unless we conclude that no reasonable fact finder could have

3

found as the trial court did." State v. Decato, 165 N.H. 294, 296 (2013) (quotation omitted). "The mental competence of a criminal defendant is an absolute basic condition of a fair trial." State v. Salimullah, 172 N.H. 739, 748 (2020). The two-pronged test for competency, as formulated by the United States Supreme Court in Dusky v. United States, 362 U.S. 402, 402 (1960), and adopted by this court, requires the following: (1) "the defendant must have a sufficient present ability to consult with and assist his lawyer with a reasonable degree of rational understanding"; and (2) "the defendant must have a factual as well as rational understanding of the proceedings against him." Salimullah, 172 N.H. at 748.

[¶11] The defendant first challenges the court's July 3, 2019 determination of competency, arguing that the court erred in failing to make specific factual findings regarding his competency and in accepting defense counsel's waiver of a hearing. He relies primarily on State v. Bertrand, 123 N.H. 719 (1983), in which we concluded that "the defendant was denied his rights to due process and a fair trial because of the trial judge's failure sua sponte to hold an evidentiary hearing on the defendant's competency to stand trial after the defendant's unexpected admission on the witness stand." Bertrand, 123 N.H. at 725-26. We stated in Bertrand that Pate v. Robinson, 383 U.S. 375 (1966), requires an evidentiary hearing to determine the defendant's competency to stand trial "[o]nce a bona fide doubt [as to competency] arises." Id. at 725. We adopted a comparable standard under Part I, Article 15 of the New Hampshire Constitution: "Due process requires that a trial judge, on his [or her] own initiative, order an evidentiary hearing whenever a bona fide or legitimate doubt arises whether a criminal defendant is competent to stand trial." Id. We then held:

> [I]n the future whenever a trial court orders a criminal defendant to undergo psychiatric evaluation to determine such competency, such an order shall be deemed to reflect the existence of a bona fide doubt as to the defendant's competency. Consequently, in such cases an evidentiary hearing must follow at which the defendant shall be entitled to present evidence and cross-examine witnesses. The trial court must make specific findings of fact on the record, and must state the evidence on which it bases its decision.

Id. at 728 (citations omitted).

[¶12] The defendant contends that the trial court erred in failing to adhere to the dictates announced in Bertrand. We disagree. In Bertrand, we set forth procedures designed to safeguard a criminal defendant's due process right not to be tried if he is legally incompetent. See id. at 724-25. Bertrand must be read in the context of its facts, however, and should not be read to require procedures that, under the circumstances, are not necessary to satisfy due process. See People v. Gensler, 527 N.E.2d 1209, 1213 (N.Y. 1988) (stating

4

that Pate and Drope v. Missouri, 420 U.S. 162 (1975), "and their requirement of a 'hearing' must be understood in th[e] context" of their facts, and that "[n]othing in those cases suggests that a plenary hearing with cross-examination of psychiatric experts is the only way to satisfy due process").

[¶13] In Bertrand, the defendant had undergone pretrial psychiatric evaluations to determine whether he was insane at the time of the charged offense and was competent to stand trial. Bertrand, 123 N.H. at 723-24. Two psychiatrists opined that the defendant was competent, but the record contained no evidence that a hearing on the defendant's competence was ever held. Id. at 723-24. We concluded that "[b]ecause the trial court did not order a competency hearing, the defendant was denied the opportunity to challenge the basis for those opinions." Id. at 726 (emphasis added). Here, by contrast, at a status conference on the record, defense counsel stated that the defense was "not asking for a further hearing" because its own examiner concurred with the OFE examiner that the defendant was competent. Thus, unlike in Bertrand, the defendant was not "denied the opportunity to challenge the basis for" the two professional opinions finding him competent; rather, he expressly declined that opportunity. Id.; see United States v. Jackson, 815 F. App'x 398, 404 (11th Cir. 2020) (noting that defendant's "stipulation—through counsel—to the psychologist's determination that he was competent to proceed demonstrated that he was afforded the 'opportunity' to proffer testimony, evidence, witnesses, and cross-examination demonstrating his incompetency but opted not to do so").

[¶14] The defendant contends, however, that the trial court erred in accepting the waiver of hearing. He argues, citing Pate and State v. Veale, 158 N.H. 632, 641 (2009), that "[o]nce the trial court possesses a legitimate doubt regarding a defendant's competence and the procedure and processes designed to safeguard that right have been triggered, a defendant cannot waive those processes." Neither Pate nor Veale, however, stands for that proposition. The Pate Court expressed doubt as to whether a defendant can waive "his right to have the court determine his capacity to stand trial." Pate, 383 U.S. at 384; see also Drope, 420 U.S. at 176. The Veale Court opined that "the right not to be tried if incompetent . . . is probably not subject to waiver." Veale, 158 N.H. at 641. The defendant here did not waive, or purport to waive, either right. Rather, he waived the opportunity to challenge the State's evidence of competency (the OFE examiner's report) after receiving a report from his own examiner that also found him competent.

[¶15] Under these circumstances, we do not read Bertrand to require an evidentiary hearing when the defense effectively indicates that it has no evidence of incompetency to introduce and, presumably, no basis for cross-examination that it believes would be effective. Cf. Drope, 420 U.S. at 173 (finding constitutionally adequate, on its face, a state procedure that, among other things, "requires the court to hold a hearing if the opinion relative to

5

fitness to proceed which is required to be included in the report is contested" (emphasis added)). Here, an evidentiary hearing was not required to safeguard the defendant's right not to be tried if legally incompetent.

[¶16] For similar reasons, we reject the defendant's argument that the trial court erred in failing to make specific factual findings. Bertrand's instruction that the "trial court must make specific findings of fact on the record" presumes that the trial court resolved conflicts in the evidence, or rejected uncontroverted evidence, to reach a competency determination. Bertrand, 123 N.H. at 728; see State v. Haycock, 146 N.H. 5, 8 (2001) (stating that when "a defendant establishes a prima facie case of incompetency through the introduction of uncontroverted expert testimony, the trial court should delineate its reasons for rejecting that testimony and those reasons must be supported by the record").

[¶17] Here, the only evidence before the trial court at the time of its July 3, 2019 ruling was the OFE examiner's report, in which the examiner opined that the defendant was competent to stand trial. See Bertrand, 123 N.H. at 726 (expert opinions are evidence of competency). The defense not only declined to refute that opinion or to offer conflicting evidence, it effectively stipulated to the defendant's competency by informing the court, "We're assigned [sic] to a judicial finding that Mr. Smith is competent." We cannot conclude that it was error for the trial court to fail to make specific findings under these circumstances.

[¶18] The defendant next argues that the trial court erred by deciding he was competent on May 24, 2021 without holding an evidentiary hearing. The defendant states that after approving his request to represent himself, the trial court "developed bona fide concerns about [the defendant's] competence to stand trial" and therefore "ordered re-examination of competency to stand trial generally, not just competency to proceed pro se." We do not share the defendant's interpretation of the trial court's orders regarding its competency concerns. See State v. Hinkley, 174 N.H. 414, 421 (2021) ("The interpretation of a trial court order presents a question of law for us to decide."). Although the trial court directed the evaluator to opine on the defendant's competency to stand trial "[i]f the evaluator opines that the defendant is currently not competent to stand trial as an unrepresented defendant," the trial court never expressed a bona fide doubt as to the defendant's competency to stand trial. The only doubt harbored by the trial court was as to the defendant's ability to perform the tasks required in mounting a defense without representation by counsel.

[¶19] Because no bona fide doubt as to the defendant's competency to stand trial had arisen, the requirement to hold a hearing was not triggered. We acknowledge our statement in Bertrand that an order for psychiatric evaluation to determine a defendant's competency "shall be deemed to reflect the existence

6

of a bona fide doubt as to the defendant's competency." Bertrand, 123 N.H. at 728. To apply that pronouncement here, however, would fly in the face of the trial court's five-page narrative order detailing the trial court's concerns and explicitly stating that the court had "a bona fide concern as to whether [the defendant] is able to 'carry out the basic tasks needed to present his own defense without the help of counsel.'" (Quoting Edwards, 554 U.S. at 175-76). Accordingly, although we presume such situations will be rare, we now clarify that the above-quoted statement in Bertrand operates in the absence of a trial court order explaining a contrary reason for ordering an evaluation.

[¶20] Nor do we share the defendant's interpretation of the record of the hearing on March 25, 2021. The defendant contends that his "stand-by counsel twice urged the court to hold a hearing" and that the defendant "himself asserted that he disputed the entire competency examination and its findings." He also argues that failing to hold a hearing violated his "Faretta right to a self-directed defense." See Faretta v. California, 422 U.S. 806 (1975).

[¶21] After reviewing the record, we conclude that standby counsel did not request an evidentiary hearing on competency. Counsel suggested that "there probably needs to be some type of hearing relative to competency" and that "probably some type of competency hearing would be appropriate" to "figure out how Hart v. Warden applies to this case." In context, it is clear that the issue on which defense counsel suggested that a hearing should be held was, as the trial court immediately stated, "really a matter of a legal interpretation"; that is, whether there is a different standard for competency to self-represent. Defense counsel did not disagree with the trial court's interpretation.

[¶22] Also at the March 25 hearing, after the trial court asked if anyone challenged the opinion that the defendant was incompetent to represent himself, the defendant stated that he "disagree[d] with the report itself" and explained the basis for his disagreement. Looking again at context, it is clear that the defendant disagreed with the examiner's opinion that he was incompetent to represent himself, not the opinion that he was competent to stand trial. In addition, the defendant acquiesced in his counsel preparing a legal memorandum, in consultation with him, on the issue of separate competency standards. We conclude there was no Faretta violation.

[¶23] The defendant next argues that the trial court erred in failing to sua sponte order a competency hearing based upon his behavior at trial. "As the trial court is in the best position to evaluate the criminal defendant's behavior, we grant deference to its decision regarding the need for a competency hearing." State v. Zorzy, 136 N.H. 710, 715 (1993). We have reviewed the record and do not find sufficient evidence to raise a bona fide doubt as to the defendant's competency to stand trial. See id. We conclude that the trial court did not err in failing to order a competency hearing sua sponte.

7

[¶24] Finally, the defendant challenges the order for restitution in the amount of $495,043.53 "because that amount was not supported by the evidence." The State contends that this argument is not preserved for our review. Assuming without deciding that the defendant preserved this issue for our review, we conclude that his argument is without merit.

[¶25] "In reviewing the trial court's ruling [on restitution], we accept its factual findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions is de novo." State v. Gedney, 174 N.H. 508, 510 (2021) (citation omitted). "Determining the appropriate restitution amount is within the discretion of the trial court." Id. "When we determine whether a ruling made by a judge is a proper exercise of judicial discretion, we are really deciding whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. State v. Lambert, 147 N.H. 295, 296 (2001). Here, as the State points out in its brief, the evidence at trial supported restitution in an amount greater than was actually ordered. Thus, even if there were error, it did not prejudice the defendant. Accordingly, the defendant cannot show that the court's exercise of discretion is unsustainable. See id. ("To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." (quotation omitted)).

[¶26] To the extent the defendant argues that the trial court erred by "delegating the restitution calculation to the Department of Corrections," we disagree. The sentencing order specified that restitution in the amount of $495,043.53 "shall be paid through the Correctional Facility or Department of Corrections as directed by the Probation/Parole Officer." It further stated that "the Department of Corrections is requested to determine if any of the stolen funds have been returned to the [victim's] estate, through civil process or otherwise, and credit the defendant for any amounts so returned." Thus, the trial court determined the appropriate amount of restitution, see Gedney, 174 N.H. at 510, and requested only that the Department of Corrections perform the ministerial task of ensuring that the victim's estate did not receive restitution for amounts already returned to it. See RSA 651:63, I (2016) (providing that "restitution is not intended to compensate the victim more than once for the same injury"). Accordingly, we reject the defendant's argument.

Affirmed.

BASSETT and DONOVAN, JJ., concurred.

8